pUNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICKY TEJADA, | |
| Plaintiff, | CIVIL ACTION NO. 3:18-cv-01096 |
| v. | (JONES, C.J.) |
| | (SAPORITO, M.J.) |
| SUPERINTENDENT DELBALSO, et al., | |
| Defendants. | |

## **MEMORANDUM**

This is a *pro se* prisoner civil rights action. At the time of filing, the plaintiff, Ricky Tejada, was incarcerated at SCI Retreat, a now-shuttered state prison located in Luzerne County, Pennsylvania. He is currently incarcerated at SCI Rockview, a state prison located in Centre County, Pennsylvania.

In his complaint, Tejada asserts federal civil rights claims arising out of an incident that occurred on May 31, 2016. He alleges that, in connection with a movement from a shower unit to his cell, several of the defendants used excessive force against him, beating and restraining him without justification. He further alleges that he was left in his excessively air-conditioned cell for an extended period without clothes and while in

restraints, that he was denied prompt medical treatment for injuries he suffered as a result of the excessive use of force, and that he was deprived of his personal property without due process of law. Finally, he alleges that these actions were undertaken by correctional officers in retaliation for his previous filing of inmate grievances.

The parties have engaged in discovery and a motion for summary judgment by the defendants is now pending. The instant motion, however, arises out of an ongoing discovery dispute between the parties. The plaintiff has sought the disclosure of various video recordings by the defendants. Although not without some logistical difficulties along the way, the defendants have produced digital video recordings of the incident itself, including surveillance video recorded from cameras located inside the plaintiff's cell and in the hallway outside it, and a video recording from a handheld camera made by a member of the use-of-force team that subdued, restrained, and transported Tejada from the shower to his nearby cell.

The plaintiff asserts that these videos are incomplete. The defendants produced approximately 4½ minutes of surveillance video from the hallway camera, approximately 8 minutes of surveillance video

from Tejada's cell, and approximately 11 minutes of handheld video footage recorded by a use-of-force team camera operator. The entire incident itself—from the moment the shower unit door was opened until Tejada's cell door was closed and secured with him alone inside it—elapsed over a period of approximately 4 minutes, and each of the three videos produced depicts the entire incident, plus some additional time before and after it. In addition to the incident, the handheld camera footage also included a short after-action debriefing by the members of the use-of-force team. Tejada argues, however, that the defendants' production of video footage is incomplete because he had expressly requested the production of surveillance video covering a 3-hour period between 11:30 a.m. and 2:30 p.m. that day. He appears to claim that this additional video footage would have depicted conversations between himself and correctional officers and the confiscation of personal property from his cell.

The defendants have responded that they have produced all of the video that was preserved—that is, all video related to the use of force itself, which is all that is relevant to the plaintiff's excessive force claims—and any additional video footage requested by the plaintiff in

discovery was no longer available because it had been deleted pursuant to routine document retention policies prior to the filing of this action.

The plaintiff now seeks spoliation sanctions under Rule 37(e) of the Federal Rules of Civil Procedure. Specifically, he requests that we strike the video footage that was preserved and produced (that is, preclude the defendants from relying on it as evidence), that we presume any lost or destroyed video footage was unfavorable to the defendants and instruct a jury that it must presume so as well (that is, give the jury an "adverse inference" instruction), and that we direct the defendants to pay him $3,500 for the cost of litigating this motion.[1]

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 110 (E.D. Pa. 2005). Sanctions for the spoliation of electronically stored information, such as the digital video recordings at issue here, are governed by Rule 37(e) of the Federal Rules of Civil Procedure. *Bistrian v. Levi*, 448 F. Supp. 3d 454, 467 (E.D. Pa. 2020).

---

[1] We note that the plaintiff, who is proceeding *pro se*, has failed to articulate any basis at all for this figure.

"Where [Rule 37(e)] applies, it provides the *exclusive* remedy for spoliation of electronically stored information ('ESI'), foreclosing reliance on the court's inherent authority." *Id.* at 464 (emphasis added).

Rule 37(e) provides that spoliation occurs where ESI "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). The elements of spoliation under Rule 37(e) are:

> First, the spoliating party was under a duty to preserve when the loss occurred. Second, the lost ESI was within the scope of the duty to preserve. Third, "the information was lost because the party failed to take reasonable steps to preserve" it. Fourth and finally, because ESI "often exists in multiple locations," spoliation occurs only where the information is truly lost and not recoverable elsewhere.

*Bistrian*, 448 F. Supp. 3d at 465 (footnotes omitted) (quoting Fed. R. Civ. P. 37(e) advisory committee's note (2015)).

If we find that spoliation occurred, we must then determine what sanction to impose. *Id.* at 466. "If a party 'acted with intent to deprive another party of the information's use in the litigation,' the district court may draw an adverse inference or even impose case-dispositive sanctions." *Id.* (quoting Fed. R. Civ. P. 37(e)(2)). In the absence of bad

faith, however, "a court may impose a range of lesser sanctions if the loss of the information prejudiced another party." *Id.* (citing Fed. R. Civ. P. 37(e)(1)). In addition, the Third Circuit has set out three factors we must consider in contemplating Rule 37(e) spoliation sanctions:

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76 (3d Cir. 2019); *see also Bistrian*, 448 F. Supp. 3d at 466 (noting that the *GN Netcom* factors are still applicable to motions governed by a 2015 amendment to Rule 37(e)).

Here, the plaintiff's motion founders at the first step. Rule 37(e) "does not apply to information that was lost or destroyed before a duty to preserve it arose." *Bistrian*, 448 F. Supp. 3d at 467 (citing Fed. R. Civ. P. 37(e) advisory committee's note (2015)). "The duty to preserve arises no later than when a lawsuit is filed but may be triggered earlier than the filing of the complaint depending on the particular circumstances." *Id.* This lawsuit commenced when the plaintiff filed his *pro se* complaint—which included his property-related due process claims—on May 29,

2018, nearly two years after the May 31, 2016, incident occurred. (Doc. 1.) The defendants contend that any additional responsive video footage—if any ever existed—was automatically deleted from their systems long before the complaint was filed.

"When a party argues that spoliation occurred before the complaint was filed, the court must conduct a fact-sensitive inquiry to determine at what point the spoliating party reasonably should have anticipated the litigation." *Bistrian*, 448 F. Supp. 3d at 468. Here, it is clear that the defendants could have reasonably anticipated—and did anticipate—litigation concerning the use-of-force incident on May 31, 2016. They preserved cell and hallway surveillance video footage and handheld use-of-force-team video footage of the entire use-of-force incident for investigative use, and they preserved and produced that video footage for the plaintiff's inspection in this litigation.

But

> [t]he duty to preserve encompasses only relevant evidence. . . . A litigant is not required to keep "every document in its possession"—rather, only those items that are relevant, "reasonably calculated to lead to the discovery of admissible evidence," or "reasonably likely to be requested during discovery" need to be preserved."

*Id.* at 473 (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2013) (footnotes omitted).

In addition to the use-of-force incident itself, Tejada argues in his motion papers that the defendants had a duty to preserve cell and hallway surveillance video footage for a substantially longer, 3-hour block of time. He proffers that this additional footage would have depicted the defendants removing personal property from his cell prior to the use-of-force incident, and it would have depicted him conversing with certain defendants.[2] He appears to contend that this additional footage would somehow bolster his claims that the defendants deprived him of his personal property without due process of law, and that the defendants' use of force was unjustified—it is altogether unclear, however, just how the missing video footage would have done so. In any event, Tejada has proffered no reason whatsoever why the additional video footage would have been relevant to his claims concerning the use-of-force incident itself.

Tejada appears to argue that the defendants had a duty to preserve surveillance video footage for this additional 3-hour block of time simply

---

[2] Notably, the surveillance video footage does not include any audio.

because he requested it. On June 3, 2016—three days after the incident—Tejada submitted an "Inmate's Request to Staff Member" form to the facility grievance coordinator concerning "the 5/31/16 incident," in which he requested that prison officials preserve surveillance video footage for a 2½-hour period, from 12:00 noon to 2:30 p.m. Beyond reference to "the 5/31/16 incident," the inmate request form did not describe the incident or articulate any particular claims relating to it.

On June 6, 2016, Tejada submitted his "Official Inmate Grievance" to the facility grievance coordinator. Upon its receipt on June 7, 2016, the grievance coordinator assigned it Grievance No. 629472. In his grievance, Tejada stated that he had been "attacked" on May 31, 2016, by unidentified correctional officers because he had submitted an unspecified grievance or grievances. Tejada's grievance also characterized this incident as an "assault" on him. He further stated that, afterward, medical staff failed to adequately clean his wounds, resulting in an infection, and failed to x-ray his injured wrist, and he complained about the general conditions of his confinement after the incident, stating that he was left in a cold cell without any clothing, bedding, personal hygiene items, or other personal property. For relief, Tejada requested

that prison officials preserve surveillance video footage for a 3-hour period, from 11:30 a.m. to 2:30 p.m., and that they investigate his claims. The grievance did not, however, articulate any claim that Tejada's personal property was taken without due process.

On January 17, 2017, following an investigation, the assigned grievance officer denied Tejada's grievance on its merits. The grievance officer stated that video footage and interviews with staff revealed that, contrary to Tejada's characterization of the incident in his grievance form, the use of force occurred because Tejada assaulted the escorting officers while he was being escorted from the showers to his cell. The grievance officer found that the contents of Tejada's cell were confiscated because of his assaultive behavior. The grievance officer further found that Tejada was offered medical attention, but he refused it. Finally, the grievance officer noted that "video footage of [the] incident on 5/31/16 was preserved."

Tejada argues that the defendants had a duty to preserve the entire 3-hour block of video footage simply because he requested it in his original inmate grievance papers. But "[a]n inmate cannot trigger the duty to preserve simply by requesting jail officials preserve a piece of

evidence." *Laughlin v. Stuart*, Case No. 19-cv-2547 (ECT/TNL), 2020 WL 4747665, at *2 (D. Minn. Aug. 17, 2020). "Rule 37(e) requires the preserving party to maintain only *relevant* evidence, as viewed from that party's perspective." *Id.* (emphasis added); *see also Bistrian*, 448 F. Supp. 3d at 473 ("The duty to preserve encompasses only relevant evidence."). Here, Tejada's unilateral demand that prison officials preserve a 3-hour block of surveillance video footage itself imposed no duty to preserve on the defendants.

The defendants' pre-complaint duty to preserve the particular digital video footage at issue extended only so far as they could reasonably foresee litigation and appreciate that the ESI at issue should be preserved for possible use in that litigation. *See Bistrian*, 448 F. Supp. 3d at 468 ("A party 'is under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation.'") (quoting *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 336 (D.N.J. 2004)). *See generally* 8B Wright & Miller, *Federal Practice & Procedure* § 2284.2 (3d ed. 2021) (noting that "a determination when the duty to preserve was 'triggered' . . . normally turns on whether the party should foresee litigation and also appreciate

that the information should be preserved for possible use in that litigation"). Upon the receipt of Tejada's grievance by prison officials, it was reasonably foreseeable that litigation regarding the May 31, 2016, use-of-force incident might occur, and the defendants reasonably should have known at that point that video footage of the use-of-force incident itself would be relevant in that litigation. Indeed, they did preserve that video, and ultimately they produced it to the plaintiff for inspection.

But based on Tejada's grievance papers alone, the defendants' duty to preserve was not triggered with respect to any of the rest of the 3-hour block of surveillance video footage he seeks here in discovery. The grievance complained about the use of force itself, and that video footage was preserved and produced. The grievance complained about the conditions of Tejada's confinement immediately thereafter—in his cell with no clothing, bedding, or personal property—and cell-camera video footage depicting that was preserved and produced.[3]  The grievance

---

[3] Indeed, the cell camera surveillance video footage continued for several minutes after the incident, after Tejada had been secured in his cell and prison officials had left. The footage ends only after Tejada had smeared something on the lens, preventing the camera from recording any further images of the interior of his cell. Any subsequent interactions with correctional officers or medical staff could not have been recorded by the surveillance camera in his cell in any event.

complained about a purported conspiracy among the correctional officers, their supervisors, and medical staff to retaliate against him for his filing of prior grievances, but any video footage recorded on the surveillance cameras, which did not record any audio to accompany the video footage, could not have conceivably been probative of these allegations.

Finally, the grievance complained that Tejada's personal property had been confiscated—a fact that is entirely undisputed—but it did not articulate a due process claim because it did not assert that this property had been taken without affording him a post-deprivation administrative remedy for its loss. A property-related due process claim requires an inmate to establish not only the confiscation of property, but also that the inmate was afforded no post-deprivation administrative remedy. *See Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008). The defendants could not be reasonably expected to foresee that video footage of the undisputed confiscation of personal property from an inmate's cell would be relevant to an *unarticulated* due process claim, particularly when that footage could not possibly shed any light whatsoever on whether the inmate was

afforded an adequate post-deprivation remedy.[4]

To the extent a pre-litigation duty to preserve was triggered by submission to prison officials of the plaintiff's inmate grievance papers, the scope of that duty to preserve was limited to the digital video footage that was in fact preserved by the defendants and produced to the plaintiff for inspection. No duty to preserve was triggered with respect to the remainder of the digital surveillance video footage sought by the plaintiff. Thus, we find the plaintiff's Rule 37(e) motion for spoliation sanctions is meritless.

The plaintiff's motion will be denied.

An appropriate order follows.


Dated: June 16, 2021                    *s/Joseph F. Saporito, Jr.*
                                        JOSEPH F. SAPORITO, JR.
                                        United States Magistrate Judge

---

[4] Notably, the Third Circuit has held that "[a]dequate post-deprivation remedies include prison grievance programs and state tort law." *Brown v. Warden Pike Cty. Corr. Facility*, 693 Fed. App'x 176, 177 (3d Cir. 2017) (per curiam) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000); *Reynolds v. Wagner*, 128 F.3d 166, 179–81 (3d Cir. 1997)).