UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

RICKY TEJADA
    Plaintiff,

VS.

SUPERINTENDENT
DELBALSO, ET AL.,
    Defendants

No. 18-CV-1096
(Jones, J)
(Saporito, JR, MJ)

FILED SCRANTON
JUL 23 2021
PER _____ DEPUTY CLERK

## PLAINTIFF RICKY TEJADA OBJECTIONS TO THE MAGISTRATE REPORT & RECOMMENDATION

Plaintiff, Ricky Tejada, pro se ("Mr. Tejada" or "Plaintiff") respectfully submits this objection to the magistrates Report and Recommendation. Defendants motion for summary judgement should be denied because there is a genuine dispute as to material facts essential to Mr. Tejada claim that the defendants violated Mr. Tejada constitutional Rights, and therefore summary judgement is inappropriate.

## I. INTRODUCTION

This court should deny defendants motion for summary judgement because significant issue's of material fact, and, credibility determinations, demand Resolution at trial. This court has previously recognized that, in cases where the only witnesses to the events are the parties themselves, the cases often turn on the determination of credibility, which, indisputably, is the Role of the Jury. In the case at bar, the court needs to look no further than the parties diverging accounts of the incident, including defendant lieutenate Biscoe own diverging account, to determine that this case should proceed to a trier of fact. Mr. Tejada's sworn testimony is that, on May 31st, 2016, the defendants used force on him, tearing miniscus in knee, in retaliation, due to grievances, Mr. Tejada filed against the defendants, that morning of May 31, 2016.

resulting in the defendants destroying Mr. Telada property. defendants have disputed this claim, attributing the use of force against Mr. Telada, due to him kicking one of the defendants. therefore summary judgement motion should be denied, as a matter of law, because it fails to establish that, there is no genuine issues, as to the material facts

## II. STATEMENT OF THE FACTS:

The parties have given conflicting accounts, as to what led up to the use of force, during the use of force, and after the use of force, and there is a genuine dispute, as to 11 facts, that are material to Mr. Telada's claim. First, there is a genuine dispute, as to whether defendants used force, sadistic -ally and maliciously, with the intent to cause harm, or to maintain or restore discipline, when Mr. Telada exited shower.

Mr. Telada testified that, on a non shower day (RHU has designated days) defendants concocted or conspired to retaliate against Mr. Telada, for the grievances he turned in that morning (May 31, 2016) against them, by tricking Mr. Telada into coming out of cell for shower (the subterfuge or ploy) so defendants can take/destroy his property, due to that grievance against defendants that morning, hence, shower scam.

Second, when taking Mr. Telada to shower, defendants deliberately moved the black floor (shower) mat from the front of shower, and moved it off to the side of shower, where it could'nt be used, just seconds before placing Mr. Telada in shower. and when escorting Mr. Telada to this shower, the defendants did not use a hand held camra, and it was only 2 officers escorting the hand cuffed Mr. Telada to shower

Third, the video on this (moving floor mat and escort to shower) was'nt preserved, though just minutes before they took (exit) Mr. Telada out of shower, which video (of exit out of shower) was preserved

Four, once Mr. Telada was locked in shower, the defendants went in Mr. Telada cell, joined by 2 additional officers, and took/destroyed

his personal property, due to that grievance he filed against them, that morning, and not because of an allege kick (assault) upon exiting the shower as defendant lieutenate Biscoe claims.

Five, in contrast to how escorted to shower by defendants, the defendants now have a hand held camra to record the exit out of shower, and 2 officers, in a manufactured slip and fall (removal of floor (shower) mat above) to disguise the planned use of force

Six, according to defendants 6.3.1 Procedure manual, section 32 at page 32-6, hand held camra usage, is only to record the planned use of force, when used, prior to use of force, which dispense with the position of the defendants that it was unplanned

Seven, preserved video by defendants, which contains audio, and is now in the possession of the court, demonstrates, at no time, was Mr. Telada ever given a order to stop resisting, by the defendants, nor does this video id, clearly or even conclusively demonstrate, this allege second kick. the allege second kick, being defendants excessive force (miniscus tear in knee) on Mr. Telada

Eight, because Mr. Telada, like when escorted to shower he was in hand cuff's, upon exiting shower, he was also hand cuffed (i.e., hand cuffed behind back), and at 130 pounds, being restrained by six officers trained specially in the use of force, each officer weighing in excess of 175 pounds each, as video proves, it was impossible to over power or resist this use of force team, making miniscus tear, to punish or harm Mr. Telada.

Nine, defendant, lieutenate Biscoe position is, force was used, due to Mr. Telada kicking one of the defendants upon exiting shower, and the property destruction occurred, not when Mr. Telada was locked in shower but after Mr. Telada kicked the defendants. this version, is therefore in direct dispute with defendants, lieutenate Wall position, which was, the destroyed property, was taken, prior to use of force, to be searched

Ten, there is a genuine dispute, as to the verbal exchange, between Mr. Telada, and the defendants, as outlined in the amended complaint. the verbal

exchange, provides context, as to the defendant's action, and indicate that, they sought to punish Mr. Tejada for his grievances. Mr. Tejada has testified that, and the amended complaint alleges, that this case, came about as a result of Mr. Tejada grievances, such allegation/testimony, has been mischaracterized or sanitized though, and is now, Mr. Tejada not quoting defendants in this retaliation claim, but its Mr. Tejada's position that every thing that happened is retaliation. Therefore a dispute exist between defendants and Ricky Tejada about these transactions

eleven, and finally, there is a genuine dispute, as to whether, defendants has thwarted Mr. Tejada from taking advantage of the grievance process, the morning of May 31, 2016, through machination, when Mr. Tejada turned over to them, grievance for processing, grieving defendants. Mr. Tejada testified that, defendants used the ruse of shower, to lure him out the cell, so they can retaliate, and take/destroy his property, because of that grievance. defendant's position is, the destruction of property and subsequent use of force, was due to kick by Mr. Tejada to defendant Cespedes which is in direct dispute, with defendant, lieutenate Wall position, who claims the property was taken to be searched, not because allege assault (kick)

## III. LEGAL STANDARD:

Per F.R.C.P. 56 (c), summary judgement is "only appropriate, if, "there is no genuine issue as to any material fact and... the moving party is entitled to judgement as a matter of law", see also, Smith v. Mensinger, 293 F.3d 641, 647 (3rd cir. 2002)

a "material" fact is, one that "might affect the outcome of the suit under the governing law..." Anderson v. Liberty Lobby Inc, 477 U.S. 242, 248 (1986) a "genuine" issue exist, "if the evidence is such that, a reasonable jury could return a verdict for the non moving party" id

When considering a motion for summary judgement, a judge's function "is not to weigh the evidence, and determine the truth of the matter, but to determine, whether there is a genuine issue for trial", Brooks v. Kyler, 204 F.3d

102, 105 n.5 (3rd Cir. 2000). Indeed, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, are jury functions, not those of a judge, whether he is ruling on a motion for summary judgement, or for a directed verdict" Anderson, 477 U.S. at 255. "The evidence of the non movant, is to be believed, and all justifiable inferences are to be drawn in his favor" id, see also, Mensinger, 293 F.3d at 647 (facts are to be viewed, in light most favorable to the non moving party); Kyler, 204 F.3d at 105 n.5 (same). Further, "where there are no non participant witnesses to an allege excessive force . . . the plaintiff's version of events is particularly important, and cannot be dismissed as 'conclusory'" Santiago v. Fields, No. 05-cv-4824, 2009 WL 693642, at *5 (E.D. Pa. March 12, 2009) (citing Mensinger, 293 F.3d at 650 (adopting plaintiff's version of facts, for summary judgement stage); Barndt v. Pucci, No. 05-2666, 2008 WL 618776, at *5 (M.D. Pa. March 3rd, 2008) (same). "At summary judgement stage, in other words, all that is required, for a non moving party to survive the motion, is that, sufficient evidence, supporting the claimed factual dispute, be shown, to require a jury or judge to resolve, at trial, the parties differing versions of the truth", id. (citing, Jackson v. Uni. of Pittsburgh, 826 F.2d 230, 233 (3rd Cir. 1987)).

## IV. CIVIL LIABILITY MAY BE IMPOSED FOR CORRECTIONS OFFICER'S EIGHTH AMENDMENT VIOLATION

In the magistrates Report & Recommendation, he only points out the physical aspect of an 8th amendment claim, but this is not what an 8th amendment claim encompasses, in it's entirety. The malicious and sadistic use of force even without significant injury, is an 8th amendment violation (see, Hudson v. McMillian, 503 U.S. 1 at 7-9 (1992)), as is other treatment, that unjustifiably, inflicts pain or injury (see, Hope v. Pelzer, 536 U.S. 730, at 738 (2002)) or humiliate or antithetical to human dignity (see Hope v. Pelzer, 536

U.S. 730 at 738 and 745 (2002)). The supreme court has also held, and numerous decision has held, that, conduct can violate the 8th amendment, even if it does not inflict visible injury, or cause lasting or permanent harm (see, Light v. Napoleon, 897 F.3d 103, at 111 (3rd Cir. 1990)) though the Prison Litigation Reform Act, bars recovery of damages, for mental or emotional injuries, in the absence of physical injury.

The 8th amendment standard, draws it meaning, from evolving standards of decency, that mark the progress of a maturing society (see, Rhodes v. Chapman, 452 U.S. 337 at 346 (1958)). In other words, the prisoner must show that, the treatment / violation of which he complains of, is not one that today's society chooses to tolerate (see, Helling v. McKinney, 509 U.S. 25 at 36 (1993)). However, judges are suppose to rem, as much as possible, on objective factors, such as statutes, and not on there personal opinion about standards of decency (see, Rhodes, 452 U.S. at 346 (1958)).

In 8th amendment cases, court inquires, whether conditions alone or in combination, deprive inmates of the minimal civilized measures of life necessities (see, Rhodes, 452 U.S. at 347 (1958)). Under this totality of the circumstances approach, merely unpleasant conditions, do not automatically become unconstitutional, when you add them together. Rather, the conditions must have a mutually enforcing effect, that produces the deprivation of a single, identifiable human need, in order to become unconstitutional in combination (see, Wilson v. Seiter, 501 U.S. 294 at 304 (1991)). Examples of this mutually enforcing effect, includes being free from mental anguish and misery, due to being kicked and being thrown around in a van, by correctional officers put there to protect Mr. Telada, from such treatment (see, Scher v. Engelke, 943 F.3d 921 at 924 (3rd Cir. 1981)) (see also: Light v. Napoleon, 897 F.2d 103 at 111 (3rd Cir. 1990)) feeling immediate physical and psychological pain, every time Mr. Telada, got slapped upside his head and face, by officers who are paid by the state, to prevent Mr. Telada from going through this type of abuse (see, Hudson v. McMillian, 503 U.S. 1 at 7-8

(1992))  and Mr. Tejada couldn't breathe, due to actions of officer's, which lead to Mr. Tejada feeling embarrassment, and psychological fear of not knowing how far these officers were willing to go, while Mr. Tejada, unarmed, hand cuffed and shackled, and all by himself, with no inmates or staff witnesses, to intervene and protect, while in that van, away from any type of people, that could help Mr. Tejada, if these officers decided to jeopardize Mr. Tejada safety any further then they already were in that van, and/or Mr. Tejada's life (see Baze v. Reef, 553 U.S. 35, 128 S.Ct. 1520 at 1532 (2008))

    a corrections officer, duty to intervene, "does not turn upon an officer's rank. it is neither affected by, nor proportional to, a non intervening officer's relationship to an offending colleague", Smith v. Mensinger, 293 F.3d at 651 (3rd Cir. 2002). the failure to intervene "contributes to the actual use of excessive force... and is an endorsement of the constitutional violation resulting from the illegal use of force" id. as a law enforcement officer, corrections officers, like police officers, are sworn to uphold the law, and cannot escape liability, by turning a blind eye to the illegal conduct of their colleagues, id at 651-52. therefore, "if Mr. Tejada can show at trial, that an officer used excessive force, resulting in minisous fear on knee, while defendants ignored a realistic opportunity to intervene in the May 31, 2016 use of force Mr. Tejada can recover" id at 652 (citing Miller v. Smith, 220 F.3d 491 at 495 (7th Cir. 2000)).

    Plaintiff single human need, to be safe and free from harm, as well as any physical pain, especially inflicted upon Mr. Tejada, by the same officers hired by the state, to keep Mr. Tejada safe from that type of treatment, was infringed upon, by these officers, during than van transport, this July 28, 2018, which triggered immediate 8th amendment violation, that just can't be over looked by this court, or else, what message would this court be sending to society, about the unjust treatment of the condemned men, that are governed over, by officers that inflict unnecessary physical / psychological pain upon them, maliciously, under the guise of rehabilitation 7

the core judicial inquiry, is whether force was used sadistically and maliciously, with the intent to cause harm, or to maintain or restore discipline. No where in the record, does the Jum 28, 2018 use of force incident indicate force was used to maintain or restore discipline, and Mr. Telada has notified the court, in his amended complaint, at paragraphs 36 and 79, and at deposition hearing, that the defendants, on May 31, 2016, and Jum 28, 2018 inflicted "Pain" on him (see deposition hearing transcripts, at page 71 & 60)

## V. ACCESS TO COURT CLAIM:

The report & recommendation, seems to be under the impression, that Mr. Telada, pro se, was making an access to courts claim, that started, May 31, 2016, or after. However, such finding, in the Report & Recommendation on this access to court claim, is mischaracterized, and belied by the Record.

The taking and destroying, of Mr. Telada property, prior to May 31, 2016, is demonstrated in exhibit's A, A-1 and 9-1, in amended complaint, and goes back to March of 2016.

Because of the repeated destruction and deprivation of Mr. Telada property, as outlined in paragraph's 28 and 30 of amended complaint, and exhibit-'s id, plaintiff was unable to prepare and meet the demands of his PCRA evidentiary hearing, this April 2016 — then — by defendants taking his property again (see exhibit C to amended complaint), Mr. Telada was unable to timely file his notice of appeal to the lehigh county court disposition of evidentiary hearing, an actual injury (see lewis v. casey, 518 U.S. 343, 351 (1996)) as the claim raised in PCRA petition, which got Mr. Telada, an evidentiary hearing, 15 years after conviction, was rejected, due to Mr. Telada not having his property (records etc) to prepare for this April 2016 evidentiary hearing, due to defendants, repeatedly taking plaintiff's belongings (property id)

Upon Mr. Telada returning to SCI Mahanoy, from lehigh county prison, where Mr. Telada was imprisoned at, for nearly a week, as he awaited evidentiary hearing of April 2016, defendants again, never gave Mr. Telada his

belongings (property id), and when he did finally get some property it was never given to him in time, for Mr. Tejada to timely file a Notice of appeal appealing the April 2016 order, causing this claim, raised in PCRA Petition, to be lost thereby, untimely notice of appeal, being fatal, under the Rules, see Pennsylvania Rules of appellate Procedure, Rule 105 (b) and 903 id amounting to injury then, Garcia v. Dechan, 384 fed. APPX. 94 at 95 (3Rd cir. 2010), see also, bounds v. smith, 430 U.S. 817, 828 (1977)

For its position, the Report and Recommendation, cites the lehigh county docket, yet, if the lehigh county april 2016 evidentiary hearing transcripts would have been consulited, it could have learned, Mr. Tejada notified PCRA court, prior to evidentiary hearing commencing, that, because the defendants have not giving Mr. Tejada his property (Records etc), he is'nt / has'nt prepared, and not having his records etc on this PCRA Petition's claim, is interferring with his ability to present claim, at PCRA hearing, to PCRA court

## VI. FACTS OVER LOOKED BY MAGISTRATE:

Mr. Tejada, a Pro Se Prisoner layman, in the Pro's and con's of the law, and in the particular science of the law, who does not have the skill's of a licensed to Practice, Professional Practitoner, was subject to abusive and evasive discovery practices by defense counsel, and as a Result, Mr. Tejada's discovery Request, was not answered, and Remains not answered to this very day. Which caused Mr. Tejada, to be unable to identify, the unknown John / Jane Doe defendants in the July 28, 2018 use of force incident and the medical agents, following the may 31, 2016 use of force incident. (See, costlow v. united states, 552 F.2d 560 at 564 (3Rd cir. 1977) ["court should not grant summary Judgement against a party, who has not had an oppurtunity to pursue discovery, or, whose discovery Request, have not been answered"]

If the defendants did'nt interpret Mr. Tejada, Pro se discovery Request on the John / Jane Doe Defendants, unknown to Mr. Tejada, had the defendants gave Mr. Tejada discovery, that would of led to admissible

evidence, Mr. Tejada would of got the discovery capable of identifying the John/Jane Doe defendants, therefore, summary judgement should be stayed, until the defendants complete, and/or produce, responsive records, requested by Mr. Tejada in discovery, and not answered by defendants, since the identities remain, in the sole possession of the defendants (see Costlow v. United States, 552 F.2d at 564 (3rd Cir. 1977) ("where the facts are in the possession of the moving party, a continuance of a motion for summary judgement should be granted, as a matter of course.")

discovery request not answered by defendants, is not limited to the John/Jane Doe medical defendants, or the John/Jane Doe corrections officer, in the May 31, 2016 and July 28, 2018 incidents respectively, this discovery issue is much broader than these defendants, the discovery request, sought what's relevant, to all of Mr. Tejada's federal claims

had the defendants honored the pro se discovery request, the evidence Mr. Tejada would have received, would have not only led to the identification of the John/Jane Doe defendants in the July 28, 2018 incident, and medical defendants, following the May 31, 2016 incident, but it would have also gave Mr. Tejada the support he needs, in order to solidify and revive his federal claims.

Mr. Tejada filed a motion to compel disclosure in September or October of 2020, and under the guise of, defendants provided discovery, this motion to compel, was denied. this however (discovery being provided) is belied by the discovery record though, where Mr. Tejada, pro se, attempted to bring to the attention of the court, defendants misuse of discovery process, in that, the defendant's deliberate, or careless failure to produce documents, during discovery does'nt enable, because discovery provided is non responsive, Mr. Tejada to identify the identities of the two John Doe defendants in van use of force incident in July of 2018, or the physician, physician assistant and other medical agent-'s involved in the May 31, 2016 incident

and by Mr. Tejada not being able to feature them in amended complaint, demonstrates how the defendants, used discovery method, in a manner, that

does not comply with discovery functions. to the extent that the Report & Recommendation, quotes this case procedural history on complaint being amended, what this quote or history did not give expression to, is, Mr. Telada amended his complaint, within 21 days of service, as a matter of course (without leave of court) see F.R.C.P. Rule 15 (a) (1) (A) Providing for amendments, as a matter of course, if done within 21 days of service.

because this amended complaint, amended as a matter of course, by Mr. Telada, pro se, omitted 5 or 6 key words by mistake, magistrate, wouldn't let Mr. Telada merely add them words, so he had to refile the entire complaint, to include the missing words, thats why complaint was amended, twice, before discovery though.

## VII. DISPOSITIVE QUESTION OF SECOND KICK NEED FOR FORCE

The first factor to consider, when determining an officer's liability for failure to intervene, is whether the defendant failed or refused to intervene when a constitutional violation took place in his/her presence, or with his/her knowledge. Deiker v. Blaker, No. 09-710, 2011 WL 2601962, at *5 (W.D. Pa. June 30, 2011) (citing Smith v. Mensinger, 293 F.3d at 651); see also, Santiago v. Feilds, 2009 WL 693642, at *5 (holding that, there must be "an underlying constitutional violation" for there to be a failure to intervene). In the case at bar, Mr. Telada has alleged, that defendant's failed to intervene in the excessive use of force — specifically delbalso failed to intervene in defendants retaliation against Mr. Telada. The central question, when determining whether excessive force was used, is "whether force was applied in a good-faith effort, to maintain or restore discipline, or maliciously and sadistically to cause harm", Kyler, 204 F.3d at 106 (citing Hudson v. McMillian, 503 U.S. 1 at 7 (1992))

Courts look to several factors to determine whether excessive force was used, including: "(1). the need for the application of force; (2). the relationship between the need and the amount of force that was used; (3). the extent of the injury inflicted; (4). the extent of the threat to the safety of staff/inmates as reasonably perceived by responsible officials, on the basis of the facts known

to them; and (5). any efforts made to temper the severity of a forceful response". Kyler, 204 F.3d at 106 (citing Whitley v. Albers, 475 U.S. 312, at 321 (1986)). For example, in Smith v. Mensinger, the Plaintiff, an inmate in Pennsylvania's prison system, alleged that he was the victim of an unprovoked and unjustified beating, in which he was rammed, head-first, into office walls & cabinets, by corrections officers, before being dragged to his feet, pushed against a wall, punched, and eventually choked. Mensinger, 293 F.3d at 644. The Third Circuit held, that although the defendants disputed this claim, under the Plaintiff's version of the events, the defendants used excessive force, as there was no justification, for multiple guards, to beat some one, who was handcuffed, and under their control. Id at 649-50.

Based on the factors recited in Kyler and Whitley, varying degrees of force, have been held as "excessive" in light of the surrounding circumstances see, e.g., Kyler, 204 F.3d at 109 (finding that, defendants used excessive force and reversing summary judgement, based on Plaintiff's allegations that, he was struck, slammed into wall and choked while handcuffed); Pamplin v. Coulter, No.10-227, 2010 WL 4065599, at *2 (W.D. Pa. 2010 oct.15, 2010) (denying motion to dismiss on Plaintiff's allegation that he was rammed into wall, slammed to ground and subsequently pinned there); Diaz v. Aberts, No.10-5939, 2013 WL 420349, at *7 (E.D. Pa. Feb. 4, 2013) (denying summary judgement, where Plaintiff was choked after defendants had re-asserted control over him).

This Court should deny summary judgement, because there is a genuine dispute, as to whether Mr. Telada did a second kick (and video is'nt clear on that either) and defendants used excessive force on him, although Mr. Telada was hand cuffed behind back from start to end, and defendants had control of him the entire time. It is, however, undisputed, that defendants did not give no order to Mr. Telada, saying stop resisting, or even on camra saying Mr. Telada is resisting, yet the defendants failed or otherwise refused to intervene in the excessive use of force (second allege kick) that tore min-iscus in Mr. Telada knee, although each defendant knew, that Mr. Telada hand cuffed behind the back, who only weighs 130 pounds, and the defendants

each specially trained in the use of force, and each weighing in excess of 175 pounds each, and each holding a specific body part of the handcuffed behind the back, 130 pound Mr. Telada, did not over power or resist them, yet no officer intervened to protect, though had a realistic and reasonable opportunity to do so. Resulting in miniscus tear in knee, being disguised as, Mr. Telada threw second kick. So summary judgement is inappropriate as a genuine dispute, as to the material facts of Mr. Telada claim(s) still exist. This use of force, under guise of second kick, which none of the video captures, occurred in each of the defendants presence, with there knowledge. Blaker, 2011 WL 2601962, at *5 (citing Mensinger, 293 F.3d at 651); Santiago, 2009 WL 693642, at *5. The central question, when determining whether excessive force was used, is "whether force was applied in good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm". Kuler, 204 F.3d at 106 (citing McMillian, 503 U.S. at 7)

Adopting Mr. Telada version of events, there was no need for any application of force, as Mr. Telada posed no realistic threat to the defendants, when he was handcuffed behind back, and already subdued by six officers never the less, the unarmed, out numbered, and subdued, Mr. Telada, miniscus in knee was tore, under these exact circumstances, of being subdued, handcuffed behind back, unarmed, and out numbered, by officers specially trained in the use of force, when he was not resisting

In light of the comment by defendant's, when Mr. Telada was inside shower, " that retaliation against inmates who grieve staff here in SCI Mahanoy, is business as usual", it appears that defendants, intended to maliciously punish Mr. Telada, for filing grievances against them

Finally, there is no record evidence that defendants made any att-empt to temper the severity of this forceful (miniscus tear) response (indeed, audio version in possession of court, demonstrates no order to stop resisting, or that Mr. Telada is resisting). Mr. Telada suffered significant injury to knee and shoulder, as a result of defendants action. Under the standards set forth above and based upon the evidence now of record, a jury could reasonably find that defendants used force "excessive" as it was not to maintain or restore

discipline, but was to maliciously harm or punish Mr. Telada, and therefore, summary judgement is inappropriate

Just as defendants withheld discovery on the May 31, 2016 use of force incident (e.g., who had what limb, who did what with limb etc), and the July 28, 2018 use of force incident (e.g., who them other officers were (identity) in van) and withheld the identity of the officer that said Mr. Telada refused to attend/participate in hearing or receive notice of hearing charges, defendants also did'nt produce medical records on miniscus tear in discovery

defendants seem to assert that, Mr. Telada inability to produce medical records, specifically related to defendants assault lends itself to granting defendants motion for summary judgement. this is, however, not the case. the third circuit has clearly held, that, "8th amendment analysis, must be driven by the extent of force and the circumstances in which it is applied, not by the resulting injuries" Mensinger, 293 f.3d at 648-49. the third circuit has also noted, that inmates cannot seek independent medical advice from a physician to corroborate his allegations regarding his injuries. Kyler, 204 f.3d at 108 N.7. "therefore, when courts do focus on the injury, it is important that they recognize that, 'an inmate who is proceeding pro se, is in a decidedly difficult position from which to generate 'record evidence' on his behalf . . . under these circumstances, his affidavits . . . are about the best that can be expected from him (at the summary judgement phase of) the proceedings". id. Mr. Telada has clearly stated that, he suffered significant injury to his shoulder and knee, and bruising and swelling to his wrist and body, as a result of the defendant's actions. these injuries are supported by the medical examination that was conducted on May 31, 2016 and Dr. Preston on 4/5/21, although it is impossible to prove or disprove whether the injuries resulted from defendant cespedes assault on Mr. Telada (second force) or another defendant. Mr. Telada allegations in complaint, his declaration, and his deposition, are the best evidence that he could provide in his circumstances, as a pro se layman, and his inability to produce medical records is not dispositive

Based on these facts, summary judgement is inappropriate, as a reasonable jury could find that, defendants unnecessarily escalated there use of force

# VIII. CIVIL LIABILITY MAY BE IMPOSED FOR PROPERTY CLAIM

Defendant, Lieutenant Wall, during debriefing on use of force video, stated property in Mr. Telada's cell, was taken to be searched, therefore summary judgement must be denied, because there is a genuine dispute of material facts, related to Mr. Telada's property claim, as defendant, Lieutenant Biscoe record of evidence, stated, this property was took, following the May 31, 2016 use of force, and not prior to use of force, because of Mr. Telada's allege assault on defendant Cespedes and not because it was to be searched.

Both versions, are therefore, again, in direct dispute with defendant Lieutenant Wall testimony, that, this property was taken to be searched, therefore, if Mr. Telada can show at trial, that the defendants used the ploy or subterfuge of shower, to lure Mr. Telada, out of cell, on a non designated shower day and just moments before placing Mr. Telada in hand cuff's, behind back, to be escorted to shower, by only two officers, with no hand held camra, and then, once Mr. Telada was locked in the shower, the defendants suddenly emerge, with this cart, and remove every item out of Mr. Telada's cell, except that which was nailed down, and left a bare mattress, placed Mr. Telada belongings on this cart, and left, then the defendants, reappear at shower, to escort Mr. Telada, back to that cell, and in contrast to how these defendants, escorted Mr. Telada to shower now appear with 8 officers to exit Mr. Telada out of shower, replete with hand held camra, which, per defendants policy (6.3.1. procedure manual, section 32 at page 32-6) is only for (hand held camra) the planned use of force. Noteworthy, defendants re moved, just moments before placing me in shower, the black floor (shower) mats which video is shown, off to the side instead of in the front, which video interestingly, does'nt show (the taking of this property and moving of this floor mat)

This transaction, coupled with defendants comments about Mr. Telada grievances, provides context, as to the defendant's actions, and indicate, defendants sought to punish Mr. Telada, for the grievance he handed them that morning

Therefore, if Mr. Telada can show at trial, that the defendants did that, he can recovery for this retaliation of his property being destroyed

In Palmer v. Hudson, 697 F.2d 1220 (4th Cir. 1983), the Court of Appeals reversed in part, the district court's dismissal, of that inmate's complaint, and remanded the matter, for further proceedings, on that inmate's claim that the alleged non routine search, of that inmates property, by the officer, was an unconstitutional search, in violation of the inmates 14th amendment right to (limited) privacy. There was a conflict of facts, as to whether the search was reasonable, or conducted, for the sole purpose of harassment.

    Defendant's search policy (dc adm 203) specifically provides the basis, for search and confiscation, of inmates property, and delineates three searches, each fraught with a procedure. General searches are directed by the superintendent. Random searches, are directed by intelligence captain. Investigative searches, are directed by shift commander. Each search is recorded, to indicate nature of such and who authorized it, with instructions to record (on form dc 154 A) only items took.

    Not only is defendant, lieutenate Wall position, on the taking of Mr. Telada property (amended comp. paragraph 27) in direct dispute with defendant, lieutenate Biscoe position, on the taking of this property, as outlined above, defendants have produced no record evidence to support defendant, lieutenate Wall testimony, that this property was taken, pursuant to either, a general, investigative or random search procedure (see Palmer v. Hudson, 697 F.2d 1220 at 1222 (4th Cir. 1983)) ("in assessing the validity of a proffered justification for search, a court should, of course, consider direct proof, offered by plaintiff, that the search was impermissibly motivated, by a desire to harass or humiliate, such as evidence of other acts of harrasment by defendants")

    The Report and Recommendation, mischaracterizes this property claim, and under these set of facts, a jury can reasonably find, that the alleged search and destruction of Mr. Telada, was not a routine search, but to punish Mr. Telada for his grievances, by that harassment or search

## IX. RETALIATION CLAIM:

    According to defendant's dc adm 804 policy, prior to filing an

official grievance, an inmate is instructed, to informally resolve this grievance, by orally or in writing, giving expression to grievance to unit staff, and if unsatisfied with response, then file an official grievance to formally resolve it

on May 31, 2016, Mr. Tejada turned over to defendants, an informal grievance, for resolution of his grievance issues, thereafter, defendants concocted the scheme of shower access, in order to get Mr. Tejada out of cell, so they can take Mr. Tejada cell property, as a result of this grievance

what motivated defendants, to come up with shower scam, and trick plaintiff thereby, getting Mr. Tejada out of cell, was the grievance he sought to be processed, when he handed it over to the defendants, the morning of May 31, 2016. grievance filing is protected conduct. the adverse action, was defendants destroying Mr. Tejada property, then, once destroying this property was accomplished, defendants embarked on a planned use of force, disguised as unplanned, and manufactured a plan slip and fall, by deliberately, removing the black floor mat for shower, so plaintiff can lose balance, and defendants jump on him as a result of this grievance Mr. Tejada turned in that morning, see Mitchell v. Horn, 318 F.3d 523 at 530 (3rd Cir. 2003), resulting in tear in meniscus as a result of this planned use of force, upon Mr. Tejada exiting shower

defendant, lieutenant Wall position, is that, this property was taken to be searched, which is in direct dispute, with defendant, lieutenant Biscoe position, who testified that, the property was taken, due to Mr. Tejada kicking defendant Cespedes, not to be searched. therefore a genuine dispute exist and summary judgement then, is inappropriate and if Mr. Tejada can show at trial, the above, he can recover

in Woodford v. Ngo, 548 U.S. 81 (2006), the court addressed a variety of instances, in which officials threatened individual inmates, so as to prevent their use of otherwise proper procedures. the court has recognized, such interference renders the administrative process, unavailable, in the amended complaint, at # 28-29 such threat provides context, as to defendants actions, and indicate that the defendants sought to maliciously punish Mr. Tejada, for his grievance

# X. CONCLUSION:

The court must deny defendants motion for summary judgement, because there is a genuine dispute, as to atleast eleven material facts, related to Mr. Tejada's constitutional claims, as set forth above and incorporated by reference, as if fully set forth here at length. Adopting the evidence provided by Mr. Tejada, Pro se, and all justifiable inferences therefrom, a reasonable jury could conclude, that the defendants violated Mr. Tejada, constitutional rights. Finally, because Mr. Tejada believes, that it will be helpful to the court, he respectfully request the opportunity for oral argument, and an opportunity to resubmit, all affidavits improperly filed by his witnesses, and summary judgement stayed & continued, untill discovery answer the above facts is declared, as true and correct, under the penalties of perjury, this 16th day of Jun 2021

Respectfully submitted
/s/. Ricky Tejada, Pro se

## CERTIFICATE OF SERVICE

This is to certify, that the undersigned did, this day, caused to be sent, a true and correct copy of the foregoing, upon: attorney general office, at: 15th FL, Strawberry SQ, Harrisburg, PA 17120, by first class mail postage pre paid

16 JUN 21                                   /s/. Ricky Tejada

RICKY TEJADA # EW 1339
SCI ROCKVIEW
BOX A - 1 ROCKVIEW PL
BELLAFONTE - PA 16823

RECEIVED
SCRANTON
JUL 23 2021
PER _____
DEPUTY CLERK

"LEGAL MAIL"

INMATE MAIL
PA DEPT OF
CORRECTIONS

U.S. POSTAGE >> PITNEY BOWES
ZIP 16823 $ 000.51⁰
02 4W
0000376203 JUL 20 2021

United States District Court
Magistrate Judge Saporito Jr
235 N. Washington Ave - P.O. box 1148
Scranton - PA 18501 - 1148